D. Scott Bauer, ISB No. 7927
scott.bauer@bonnercountyid.gov
BONNER COUNTY PROSECUTOR'S OFFICE
127 S. First Avenue
Sandpoint, ID  83864
Telephone:  (208) 263-6714
Facsimile:  (208) 263-6726

Darrin L. Murphey, ISB No. 6221
dmurphey@murpheylaw.com
MURPHEY LAW OFFICE, PLLC
402 West Canfield Avenue, Suite 2
Coeur d'Alene, ID  83815
Telephone:  (208) 667-7621
Facsimile:  (208) 667-7625

Barbara E. Lichman, Ph.D., California SB No. 138469
blichman@buchalter.com
Paul J. Fraidenburgh, California SB No. 280354
pfraideburgh@buchalter.com
Daniel S. Shimell, California SB No. 300931
dshimell@buchalter.com
BUCHALTER, A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: (949) 760-1121
Facsimile: (949) 720-0182
*Application for Admission Pro Hac Vice
Pending*

*Attorneys for Plaintiff Bonner County*

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO, SOUTHERN DIVISION

| | |
|---|---|
| BONNER COUNTY, an Idaho municipal corporation, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| vs. | |
| BRADLEY J. LITTLE, in his official capacity as Governor of the State of Idaho; COVID-19 FINANCIAL ADVISORY COMMITTEE; ALEX J. ADAMS, in his official capacity as the Administrator of the Division of Financial | |

1

COMPLAINT FOR DECLARATORY JUDGMENT

Management, and as Chair of the COVID-19 Financial Advisory Committee; TOM KEALEY, in his official capacity as Director of the Idaho Department of Commerce; BRANDON D. WOOLF, in his official capacity as Controller of the State of Idaho, JULIE A. ELLSWORTH, in her official capacity as Idaho State Treasurer,

                    Defendants.

---

Pursuant to 28 U.S.C. § 2201, Plaintiff BONNER COUNTY ("Plaintiff" or the "County") hereby brings this action against defendants Brad Little, in his official capacity as the Governor of the State of Idaho ("Governor Little"), the COVID-19 Financial Advisory Committee ("CFAC"), Alex J. Adams, in his official capacity as the Administrator of the Division of Financial Management and as Chair of CFAC ("Adams"), Tom Kealey, in his official capacity as Director of the Idaho Department of Commerce ("Kealey"), Brandon D. Woolf, in his official capacity as Controller of the State of Idaho ("Woolf"), and Julie Ellsworth in her official capacity as Idaho State Treasurer (collectively "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      In response to the spread of the SARS-CoV-2 virus ("Coronavirus") and resulting COVID-19 disease, Congress enacted the Corona Virus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 501 (2020) [hereinafter the "CARES Act"], which the President signed into law on March 27, 2020.

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

2.      Among other things, the CARES Act established a Coronavirus Relief Fund (the "Relief Fund") through the appropriation of $150 billion "for making payments to States, Tribal governments, and units of local government. . . ." CARES Act, § 5001(a) (codified at 42 U.S.C. § 801(a)(1)).

3.      The County is informed and believes, and thereon alleges, that Congress' intent in creating the Relief Fund was to allow the United States Department of the Treasury ("Treasury Department" or "Treasury") to quickly and efficiently make funds appropriated by the CARES Act ("Funds") available to assist each and every town, city, county, and other local government within the United States in responding to the spread of COVID-19.  Congress intended that such funds would remain available to local governments, including the County, to allow them to respond to the spread of COVID-19.

4.      The County is informed and believes, and thereon alleges, that in order to aid in the efficient distribution of these Funds, Congress authorized the Treasury Department to make direct distributions only to local governments with a population of over 500,000 persons.

5.      The County has a population of less than 500,000, and therefore was not entitled to a direct distribution from the Relief Fund.  However, pursuant to the CARES Act and subsequent Treasury regulations and guidelines, the County is entitled to receive a per capita distribution of Funds paid to the State of Idaho (the

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

"State").  The State received $1.25 billion in Funds.  Defendants have apportioned approximately $282 million of those funds for distribution to Tribes and local governments within the State.

6.      Neither Congress nor the Treasury Department have delegated any of their authority to the State to administer the Relief Fund.  Rather, the State is to function as an intermediary between the Treasury Department and the local governments within its jurisdiction by fairly distributing Funds amongst such local governments, using a per capita distribution as a benchmark of fairness and equity.

7.      Pursuant to the CARES Act and subsequent Treasury Department regulations and guidelines, the State is generally prohibited from imposing conditions on the County's receipt of Funds.  The State may only impose restrictions on the transfer of Funds to the extent necessary to facilitate the State's compliance with the CARES Act.

8.      Contrary to the general prohibition on attaching conditions to the Funds, Defendants are withholding Funds from local governments, including the County, unless the local governments agree to the unlawful conditions placed on such Funds by Defendants.  These conditions include, among other things, 1) a stipulation that the majority of the Funds may be used only for payroll expenses and cannot be used to reimburse the County for purchasing personal protective equipment ("PPE") and disinfectant products; 2) a waiver of the County's statutory

4

right to increase its tax capacity by up to 3% (the "3% Capacity") for the upcoming 2020-2021 fiscal year; and 3) a waiver of the County's statutory right to access foregone tax capacity for past years (the "Foregone Capacity").  In addition, Defendants are pressuring local governments, including the County, to accept Funds without regard to federally mandated accounting and reporting requirements, including 2 C.F.R. part 200 and other federal laws and regulations governing the administration of federal grants.

9.     By and through this Complaint, the County seeks a declaratory judgment setting forth the rights, duties, and obligations of the County and Defendants in relation to the Funds that are currently in Defendants' possession and control.

## **PARTIES**

10.    The County is an Idaho municipal corporation, and is a body politic and corporate pursuant to Idaho Statutes § 31-601.  The County was established in 1907 and is one of 44 counties in the State.

11.    Governor Little is the Governor of the State of Idaho.  He is sued in his official capacity.  The supreme executive power of the State of Idaho is vested in Governor Little.  Among his other duties, Governor Little is the Chief Budget Officer of the State of Idaho.

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

12.     CFAC is an advisory committee formed by Governor Little on April 7, 2020, by and through Executive Order No. 2020-07.

13.     Adams is the Administrator of the State Division of Financial Management, as well as the Chairperson of CFAC.  He is sued in his official capacity.  The Division of Financial Management, which Adams heads, is part of the Executive Office of the Governor.  Its primary function is to assist Governor Little in his duties as the Chief Budget Officer of the State.

14.     Kealey is the Director of the Idaho Department of Commerce, and is charged with distributing broadband grant funds.  He is sued in his official capacity.

15.     Woolf is the Controller of the State of Idaho, and is charged with the administration of federal grant funds.  He is sued in his official capacity.

16.     Julie Ellsworth is the Treasurer of the State of Idaho, and is charged with the administration of federal grant funds held in the State Treasury.  She is sued in her official capacity.

17.     Governor Little, Adams, Kealey, Woolf, and Ellsworth are public officials in the government of the State of Idaho that are charged, in their official capacities, with administering the $1.25 billion in CARES Act Funds paid to the State by the Treasury Department.  CFAC, through Executive Order No. 2020-07, is charged with collecting reports from local jurisdictions, setting policy, and

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

providing advice and recommendations to Governor Little and Adams in their administration of the CARES Act funds paid to the State.

## JURISDICTION AND VENUE

18.    This action arises under the CARES Act, a law of the United States. This Court has subject matter jurisdiction over the County's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over related state law questions pursuant to 28 U.S.C. § 1367.

19.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in this judicial district and carry out their official duties within this district.  Venue is further proper pursuant to 28 U.S.C. § 1391 (b)(2) because all of the events and omissions giving rise to this action, as further alleged below, occurred within this judicial district.

20.    The County's action for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 & 2202, and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

### The CARES Act Relief Fund

21.    The CARES Act established a $150 billion Relief Fund to be distributed to the states, Tribal governments, and local governments to pay for

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

necessary expenditures incurred due to the public health emergency created by the spread of COVID-19.

22.    Section 5001 of the CARES Act added Title VI – Coronavirus Relief Fund, to the Social Security Act (42 U.S.C. § 301 *et seq.*).  Title VI, sometimes referred to as Section 601 of the Social Security Act or simply "Section 601", establishes the Relief Fund and sets forth the purposes for which such Funds may be used.  Specifically, Section 601(d) of the Social Security Act (42 U.S.C. § 801(d)) provides as follows:

> (d) USE OF FUNDS.—A State, Tribal government, and unit of local government shall use the funds provided under a payment made under this section to cover only those costs of the State, Tribal government, or unit of local government that—
>
>> (1) are necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19);
>>
>> (2) were not accounted for in the budget most recently approved as of the date of enactment of this section for the State or government; and
>>
>> (3) were incurred during the period that begins on March 1, 2020, and ends on December 30, 2020.

23.    The CARES Act does not permit any use of the Relief Fund beyond those "necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19)."  42 U.S.C. § 801(d)(1).

8

COMPLAINT FOR DECLARATORY JUDGMENT

Nor does the CARES Act impose any further restrictions on how the Funds may be used by their recipients.

### Administration of the Relief Fund by the Department of the Treasury

24.     The Treasury Department, through power delegated by Congress to the Secretary of the Treasury, is charged with the administration of the Relief Fund.  *See* 42 U.S.C. § 801(g)(3).

25.     The CARES Act authorizes the Treasury Department to make direct payments of Funds to States, Tribal Governments, and units of local government. For purposes of the Relief Fund, a unit of local government is a county, municipality, town, or other unit of government below the State level with a population that exceeds 500,000.

26.     Plaintiff is informed and believes, and thereon alleges, that Congress set this 500,000 population threshold as a matter of administrative convenience to enable the Treasury Department to quickly and efficiently distribute Funds.  By limiting the number of local governments eligible to receive direct payments from the Treasury, Congress significantly reduced the total number of entities that the Treasury Department would have to identify and interact with in its administration of the Relief Fund.  This, in turn, facilitated Treasury's prompt payment of Funds to the States, Tribal governments, and units of local government to allow those

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

bodies to quickly respond to the emerging public health emergency created by the spread of COVID-19.

27.    To illustrate this streamlining effect, the Treasury Department identified a total of 171 units of local government that meet minimum population threshold of 500,000. As a basis for comparison, there are a total of 3,141 *counties* and county equivalents of all sizes in the 50 States and the District of Columbia.[1] Thus, Treasury was only required to identify and interact with less than 6% of the total number of *counties* within the United States. This number does not factor in the thousands of cities, towns, townships, and other municipalities throughout the 50 States.

28.    The County is informed and believes, and thereon alleges, that local governments with populations of less than 500,000 are entitled to a per capita distribution of Funds, even though they are not eligible for direct payment from the Treasury Department. Instead, the state in which such local government is located is to act as a pass-through to distribute such Funds because each of the several states are in the best position to identify and work with the local governments within their territorial jurisdictions. Specifically, at least 45% of Funds distributed to a given state are to be distributed to local governments within that state using a per capita allocation formula. *See* 42 U.S.C. § 801(c)(5).

---

[1] U.S. Geological Survey, How Many Counties are in the United States? (last accessed Jul. 12, 2020), https://www.usgs.gov/faqs/how-many-counties-are-united-states?qt-news_science_products=3#qt-news_science_products.

COMPLAINT FOR DECLARATORY JUDGMENT

BN 41185653v1

29.     On April 17, 2020, the Treasury Department published in the Federal

Register an announcement that information about the Relief Fund is available on

the Treasury Department's website, https://home.treasury.gov/policy-

issues/cares/state-and-local-governments (the "Relief Fund Website").[2]

30.     The Relief Fund Website contains, among other things, two Treasury

guidance documents related to the use and distribution of Funds by States and local

governments.  The first is the Coronavirus Relief Fund Guidance for State,

Territorial, Local, and Tribal Governments ("Guidance").  The second is the

Coronavirus Relief Fund Frequently Asked Questions ("FAQ").

31.     The Guidance states that the "necessary expenditures" requirement of

Section 601(d)(1) of the Social Security Act should be understood "broadly to

mean that the expenditure is reasonably necessary for its intended use in the

reasonable judgment of the government officials responsible for spending [Relief]

Fund payments."

32.     The Guidance further provides a list of "Nonexclusive examples of

eligible expenditures."  These include, among other things:

- Expenses for disinfection of public areas and other facilities in response to the COVID-19 emergency;

- Expenses for acquisition and distribution of medical and protective supplies, including sanitizing products and PPE;

---

[2] Coronavirus Relief Fund for States, Tribal Governments, and Certain Eligible Local Governments, 85 Fed. Reg. 21508 (Apr. 17, 2020).

COMPLAINT FOR DECLARATORY JUDGMENT

BN 41185653v1

- Payroll expenses for public safety, public health, health care, human services, and similar employees whose services are substantially dedicated to mitigating or responding to the COVID19 public health emergency;

- Costs of providing COVID-19 testing, including serological testing;

- Expenses to improve telework capabilities for public employees to enable compliance with COVID-19 public health precautions; and

- Expenses for establishing and operating public telemedicine capabilities for COVID-19-related treatment.

33.    The FAQ provides that States may only impose restrictions on transfers of Funds to local governments "to the extent that the restrictions facilitate the state's compliance with the requirements set forth in section 601(d) of the Social Security Act outlined in the Guidance and other applicable requirements such as the Single Audit Act. . . ."  The FAQ further provides, unequivocally, that "[o]ther restrictions are not permissible."

34.    The FAQ recognize the role of states as a pass-through for payments to local governments as follows:

> "To facilitate prompt distribution of [Funds], the CARES Act authorized Treasury to make direct payments to local governments with populations in excess of 500,000, in amounts equal to 45% of the local government's per capita share of the statewide allocation.  This statutory structure was based on a recognition that *it is more administratively feasible to rely on States*, rather than the

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

federal government, to manage the transfer of funds to smaller local governments.  Consistent with the needs *of all local governments* for funding to address the public health emergency, States *should transfer funds to local governments with populations of 500,000 or less*, using as a benchmark the per capita allocation formula that governs payments to larger local governments.  This approach will ensure equitable treatment among local governments of all sizes."  FAQ at 7 (emphasis added).

35.     The "per capita allocation formula" referred to in the FAQ can be found in Section 601(b)(2) and Section 601(c)(3) of the Social Security Act.

36.     Section 601(b)(2) provides that, where a unit of local government with a population over 500,000 receives a payment from the Treasury Department, the Secretary "shall reduce the amount determined for that State by the relative unit of local government population proportion amount described in subsection (c)(5) and pay such amount directly to such unit of local government."

37.     Section 601(c)(5) sets forth the per capita formula for distributing Funds to local governments as follows:

> "For purposes of subsection (b)(2), the term 'relative unit of local government population proportion amount' means, with respect to a unit of local government and a State, the amount equal to the product of—
>
>> (A) 45 percent of the amount of the payment determined for the State under this subsection (without regard to this paragraph); and
>>
>> (B) the amount equal to the quotient of—
>>
>>> (i) the population of the unit of local government; and

13

> (ii) the total population of the State in which
> the unit of local government is located."

38.     Thus, States are required to distribute Funds to local governments

pursuant to all relevant Idaho appropriations laws using the statutory per capita

formula found in Section 601, and are prohibited from imposing restrictions on

such distributions beyond those necessary to ensure the States' compliance with

Section 601(d).

39.     The FAQ further outlines specific examples of permissible uses of

Funds by States, Tribal governments, and local governments.  These include, but

are not limited to:

- COVID-19 public health emergency recovery planning;

- Emergency financial assistance programs to individuals and families
  directly impacted by a loss of income due to the COVID-19 public
  health emergency;

- Payroll or benefits expenses of public employees whose work duties
  are substantially dedicated to mitigating or responding to the COVID-
  19 public health emergency; and

- Expenses associated with contact tracing.

40.     The FAQ recognizes that Funds may be used to meet payroll expenses

for public safety, public health, health care, human services, and similar public

employees ("First Responders") *provided that* such payroll expenses are for

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

services substantially dedicated to mitigating or responding to COVID-19. The

FAQ further provides that, as a matter of administrative convenience, local

governments may presume that payroll costs for First Responders are payments for

services "substantially dedicated to mitigating or responding to the COVID-19

public health emergency, *unless* the chief executive (or equivalent) of the relevant

government determines that specific circumstances indicate otherwise." FAQ at 1

(emphasis added).

41.    States, Tribal governments, and local governments are not required to

use Funds as the source of funding of last resort.

### Treasury's Payment of CARES Act Funds to the State, and Defendants' Unlawful Administration of such Funds

42.    Congress mandated that the Treasury Department was to make Relief

Fund payments to each of the 50 States in a minimum amount of $1.25 billion.

43.    The State of Idaho received a Relief Fund payment of $1.25 billion.

These funds are currently held in the State Treasury.

44.    Pursuant to Section 601(c)(5) and Treasury regulations, including the

Guidance and FAQ, Defendants were required to apportion 45% of its $1.25

billion Relief Fund payment from Treasury for distribution to local governments

within the State. The County is informed and believes, and thereon alleges, that

the required per capita apportionment by Defendants to local governments is

approximately $562,500,000.

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

45.     Contrary to these requirements, Defendants apportioned only $282 million – or 22.56% of its $1.25 billion Relief Fund Payment – for distribution to local governments.  Defendants retained approximately $658 million – or 52.64% of its $1.25 billion Relief Fund payment – for use by State agencies.

46.     Of the $282 million Defendants distributed to local governments, Defendants apportioned only $94 million to local governments and Tribal governments on the federally-mandated per capita basis, including approximately $1.1 million allocated to the County.

47.     The remaining $188 is being withheld by Defendants (the "Withheld Funds") as part of the "Governor's Public Safety Initiative".  Defendants are limiting eligible expenses for the Withheld Funds to payroll costs only. Defendants are not allowing the Withheld Funds to be spent on any other category of expense, even though the CARES Act and Treasury regulations prohibit such restrictions.

48.     In order to receive any portion of the Withheld Funds, Defendants are requiring local governments, including the County, to submit a Notice of Intent to participate in the program by no later than July 17, 2020.  Defendants are requiring that the County include, as part of the Notice of Intent, a determination by the County that the requested amount of Funds will be an "eligible payroll expense"

COMPLAINT FOR DECLARATORY JUDGMENT

for First Responder payroll expenses incurred between March 1, 2020 and December 30, 2020.

49.     Defendants have conditioned the County's participation in the Public Safety Initiative – and therefore its access to the Withheld Funds – on the County's waiver of its 3% Capacity and its Foregone Capacity.

50.     According to the most recent data available from the U.S. Census,[3] Bonner County has a population of approximately 45,739 people.

51.     The total population of the State is approximately 1,787,065 people.

52.     The County's population is approximately 2.56% of the population of the State.

53.     The County is informed and believes, and thereon alleges, that if Defendants had utilized the per capita formula found in Section 601(c)(5) of the Social Security Act to the State's $1.25 billion Relief Fund payment – as required by the CARES Act, Treasury regulations, the Guidance and the FAQ – that the County would receive an allocation of approximately $14.4 million.[4]

54.     The County is informed and believes, and thereon alleges, that the maximum amount of Funds Defendants will distribute to the County is approximately $5.9 million – less than half of the $14.4 million Defendants are

[3] U.S. Census Bureau, Annual Estimates of the Resident Population for Counties in Idaho: April 1, 2010 to July 1, 2019 (March, 2020), https://www.2.census.gov/programs-surveys/popest/tables/2010-2019/counties/totals/co-est2019-annres-16.xlsx.
[4] $1,250,000,000 * .45 * (45,739 / 1,787,065) = $14,396,895.19.

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

required to apportion to the County using the per capita distribution formula required by Section 601(c)(5) of the CARES Act, Treasury Department regulations, the Guidance and the FAQ.

55.     Defendants will deny the County access to any portion of the Withheld Funds unless the County agrees, by July 17, 2020, to be bound by Defendants' unlawful conditions.  Further, Defendants have demanded that the County determine by July 17, 2020 the amount of Funds it may need to cover future First Responder payroll expenses through the end of this year.  If the County does not make this determination, Defendants will not distribute *any* of the Withheld Funds to the County and will instead either retain such Withheld Funds for use by the State or distribute such funds to other local jurisdictions.

56.     Absent a declaration of rights and injunctive relief from this Court, Defendants will permanently and irrevocably injure the County by denying the County access to its per capita share of the Funds and instead reassigning those monies to State Agencies or other jurisdictions.

**Defendants' Unlawful Administration of the Idaho Department of Commerce Broadband Grant Program using CARES Act Funds**

57.     Of the $1.25 billion in CARES Act funding received by the State of Idaho, the State has also allocated $50 million to the Idaho Department of Commerce Broadband Grant Program aimed at building out broadband infrastructure throughout the State.

18

58.     Defendants are charged with administering, implementing, and funding the Idaho Department of Commerce Broadband Grant Program pursuant to a set of Broadband Grant Application Guidelines ("Guidelines").

59.     The Guidelines state that the Program "is designed to meet the CARES Act criteria, and help Idaho rebound from the COVID-19 public health emergency.  Approximately 70% of the $50 million received by the Idaho Department of Commerce will be allocated to this program aimed at households that lack access to broadband."

60.     Under Section 2 of the Guidelines, an eligible project must "be installed, owned, and operated by for-profit companies, or membership owned cooperative corporations… that provide broadband services to the public." Likewise, Section 3 of the Guidelines states, "Broadband service may only be provided by for-profit companies or membership owned cooperative corporations[.]"

61.     The Program includes as eligible projects only those projects that will provide "new broadband service…installed, owned, and operated by for-profit companies, or membership owned cooperative corporations…that provide broadband services to the public."

COMPLAINT FOR DECLARATORY JUDGMENT

62.     The CARES Act restricts the use of funds provided under a payment made under section 5001 to cover only those costs that "were incurred during the period that begins on March 1, 2020 and ends on December 30, 2020.

63.     Eligible projects under the Household Broadband Grant include projects that are "completed, operable, paid for, and submitted to the Idaho Department of Commerce for payment no later than December 15, 2020.

64.     Eligible costs of the Household Broadband Grant include construction and materials, new and rehabilitative construction contracts, architect and engineering services and legal and professional services, if required to complete the project by December 15, 2020, permitting fees, validation of service expenses, equipment related to broadband infrastructure, equipment installation, and expenses related to administering the grant.

65.     Notwithstanding the requirement that a "for-profit company" must install, own, and operate the grant-funded projects, the Program requires Idaho local or tribal governments, including municipalities such as Bonner County, to serve as the "applicant" for the broadband grants and to "administer their own grants."

66.     In order to submit an application for grant funds, the applicant is required to provide to Idaho Department of Commerce specific information

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

regarding the nature of the project and the total cost of the project, including "broadband infrastructure and equipment costs[.]"

67.     Section 8 of the Guidelines, entitled "Grant Administration," requires local governments applying for Idaho Department of Commerce Broadband Grant funds to "comply with all applicable laws" related to the "procurement of goods and services purchased with or reimbursed under the Program," including, Idaho Code Title 54, Chapter 19 – Public Works Contractors, Idaho Code Title 67, Chapter 23, Design Professional Qualification-Based Selection, and Idaho Code Title 67, Chapter 28 – Purchasing by Political Subdivisions.

68.     Idaho Code § 67-2805 requires political subdivisions such as Bonner County to competitively bid any expenditure to procure public works construction valued at or in excess of $50,000, and sets forth specific procedures the County must follow in order to award the bids on such projects.

69.     Idaho Code § 67-2320 requires political subdivisions such as Bonner County to follow minimum guidelines in securing contracts for engineering, architectural, landscape architecture, construction management and land surveying services.  These include the requirement that the County "[e]stablish and make available to the public the criteria and procedures used for the selection of qualified persons or firms to perform such services."

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

70.     Section 15010 of the CARES Act created a Pandemic Response Accountability Committee to make referrals for investigation and review whether competition requirements applicable to contracts and grants using covered funds have been satisfied.

71.     Section 4018 of the CARES Act established the Office of the Special Inspector General for Pandemic Recovery with the authorities provided in section 6 of the Inspector General Act of 1978 (5 U.S.C. App.) "who shall conduct, supervise, and coordinate audits and investigations of the management by the Secretary of any program established under the" CARES Act."

72.     Depending on whether an applicant is characterized as a subrecipient or a contractor under 2 C.F.R. § 200.330, the applicant may be subject to additional federal procurement regulations, including those set forth in 2 C.F.R. §§ 200.319 and 200.320.

73.     In order to apply for grant funds under the CARES Act Idaho Department of Commerce Broadband Grant Program, Bonner County is required to submit one or more completed Applications by July 15, 2020.

74.     As a condition of submitting the application(s), the Guidelines require applicants such as the County to provide "a notarized CARES Act certification that this project meets the CARES Act criteria."

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

## FIRST CAUSE OF ACTION

**Declaratory Judgment that Defendants Are Required to Appropriate CARES**

**Act Funds on a Per Capita Basis without Additional Conditions**

(Against All Defendants)

75.    Bonner County incorporates by reference the allegations contained in paragraphs 1 through 74, inclusive.

76.    Under the CARES Act, Defendants were required to apportion at least 45% of the $1.25 billion in CARES Act Funds received by the State of Idaho to local governments within Idaho using a per capita allocation formula. *See* 42 U.S.C. § 801(c)(5).

77.    In the course of distributing Funds to local governments using the statutory per capita formula found in Section 601 of the Social Security Act, Defendants are prohibited from imposing restrictions on such distributions beyond those necessary to ensure the States' compliance with Section 601(d).

78.    Under the Constitution of the State of Idaho, Article 7, section 13, "No money shall be drawn from the treasury, but in pursuance of appropriations made by law."  Further, pursuant to Article 3, section 15, "No law shall be passed except by bill....provided, in case of urgency, two-thirds (2/3) of the house where such bill may be pending may, upon a vote...dispense with [the] provision" of reading the bill on three several days.

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

79.     An actual and justiciable controversy now exists because Defendants, and each of them, have failed to appropriate the CARES Act Funds to Bonner County based on the formula set forth by Congress and made applicable to Bonner County through Treasury's guidance.

80.     Defendant Little has not called the Legislature into special session.

81.     The Idaho Legislature has not passed an appropriation regarding CARES Act funds.

82.     Further, an actual and justiciable controversy exists because Defendants have imposed conditions on the limited Funds that have been offered or apportioned to Bonner County beyond those conditions necessary to ensure the States' compliance with Section 601(d).

83.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Bonner County seeks a declaratory judgment from this Court that Defendants are required to allocate CARES Act Funds to Bonner County after the Legislature appropriates said funds based on the per capita formula set forth by Congress and made applicable to Bonner County through Treasury's guidance, and without conditions or limitations beyond those conditions necessary to ensure the States' compliance with Section 601(d).

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

## SECOND CAUSE OF ACTION

**Declaratory Judgment that State and Federal Procurement Laws Do Not**

**Apply to Funds Distributed under the Idaho Broadband Grant Program**

(Against All Defendants)

84.     Bonner County incorporates by reference the allegations contained in paragraphs 1 through 74, inclusive.

85.     The Department of Commerce Household Broadband Grant Application requires applicants to certify that the proposal complies with the following Idaho Code competition requirements "Idaho Code Title 54, Chapter 19 (Public Works Contractors); Idaho Code title 67, Chapter 23 (Design professional qualification-based selection; Idaho Code Title 67, Chapter 28 (purchasing by political subdivisions)."

86.     Likewise, the Broadband Grant Application requires applicants to certify that the project complies with the CARES Act.

87.     Treasury's July 8, 2020 FAQs states that fund payments are "subject to the following requirements in the Uniform Guidance (2 C.F.R. Part 200): 2 C.F.R. § 200.303 regarding internal controls, 2 C.F.R. §§ 200.300 through 200.332 regarding subrecipient monitoring and management, and subpart F regarding audit requirements.

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

88.     Bonner County intends to apply for grant funds pursuant to the Department of Commerce Household Broadband Grant Program.

89.     However, the manner in which Defendants have administered the Program has made it impossible for Bonner County to make an unqualified certification of compliance with Idaho's procurement laws or with the CARES Act.

90.     Specifically, the Idaho Department of Commerce Household Broadband Grant Application requires eligible "for-profit companies" to define the project scope and submit detailed estimated costs at the time of applying for grant funds and prior to an award of the funds or any related contract.  The process set forth in the Guidelines and Application leaves no room for competitive bidding or procurement procedures because it is impossible for Bonner County to define the scope of the project and competitively bid the project under the current application process.

91.     At least one specific contractor has provided specific project details to Bonner County for purposes of meeting the Broadband Grant guidance, and has requested Bonner County's cooperation in applying for Broadband Grant funds, which cooperation Bonner County has thus far given.

92.      An actual and justiciable controversy exists because the Idaho Department of Commerce Household Broadband Grant Program imposes

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

conditions on the CARES Act funds available to Bonner County beyond those conditions necessary to ensure the States' compliance with Section 601(d).

93.     Further, an actual and justiciable controversy exists because the Idaho Department of Commerce Household Broadband Grant Program makes state and federal compliance impossible by requiring Bonner County to blindly certify compliance with state and federal procurement laws even though the Program does not afford any discretion or control to the County or provide a process that would allow competitive bidding of the grant-eligible projects.

94.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Bonner County seeks a declaratory judgment from this Court that state and federal procurement laws, including Idaho Code Title 54, Chapter 19, Idaho Code title 67, Chapter 23, Idaho Code Title 67, Chapter 28, and 2 C.F.R. §§ 200.319 and 200.320 do not apply to CARES Act funds distributed under the Idaho Department of Commerce Household Broadband Grant Program.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

## THIRD CAUSE OF ACTION

**Declaratory Judgment that Funds Distributed under the Idaho Broadband Grant Program Would Not Violate CARES Act's December 30 Cutoff Date and Would Not Constitute an Unlawful Misuse of Public Funds**

(Against All Defendants)

95.     Bonner County incorporates by reference the allegations contained in paragraphs 1 through 74, inclusive.

96.     Section 2 of the Idaho Department of Commerce Household Broadband Grant Application Guidelines requires an eligible project to "be installed, owned, and operated by for-profit companies, or membership owned cooperative corporations… that provide broadband services to the public." Likewise, Section 3 of the Guidelines states, "Broadband service may only be provided by for-profit companies or membership owned cooperative corporations[.]"

97.     The CARES Act restricts the use of funds provided under a payment made under section 5001 to cover only those costs that "were incurred during the period that begins on March 1, 2020 and ends on December 30, 2020."

98.     The Treasury's June 30, 2020 Coronavirus Relief Fund Guidance for State, Territorial, Local, and Tribal Governments (June Treasury Guidance) states that section 601(d) of the Social Security Act as added by section 5001 of the

28

CARES Act permits a State, local, or tribal government to "use payments from the Fund only to cover previously unbudgeted costs of necessary expenditures incurred due to the COVID-19 public health emergency during the covered period."

99.    Defendants have implemented and administered the Idaho Department of Commerce Household Broadband Grant Program in a manner that is inconsistent with the CARES Act's December 30, 2020 deadline because, after such date, broadband projects paid for with CARES Act funds will be owned by private "for-profit companies" and will still be in use.

100.    If Bonner County applies for and receives CARES Act federal financial assistance through the State of Idaho under the Household Broadband Grant, it remains uncertain whether the Bonner County Commissioners, Auditor and Treasurer may lawfully use the funds to pay a private company to install, own, and operate new broadband service.

101.    An actual and justiciable controversy exists because the Idaho Department of Commerce Household Broadband Grant Program imposes conditions on the CARES Act funds available to Bonner County beyond those conditions necessary to ensure the States' compliance with Section 601(d), including the requirement that the broadband infrastructure must be "owned, and operated by for-profit companies."

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

102.   Further, an actual and justiciable controversy exists because the Idaho Department of Commerce Household Broadband Grant Program appears to encourage the misuse of federal funds by applicants, who are asked to turn over grant funds to private parties who will own and use the infrastructure built with those grant funds long after the CARES Act deadline of December 30, 2020.

103.   Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Bonner County seeks a declaratory judgment from this Court that Funds distributed under the Idaho Broadband Grant Program would not violate the CARES Act's December 30 cutoff date and would not constitute an unlawful misuse of public funds.

## FOURTH CAUSE OF ACTION

**Declaratory Judgment that Bonner County May Lawfully Reimburse Broadband Equipment Costs Using CARES Act Funds**

(Against All Defendants)

104.   Bonner County incorporates by reference the allegations contained in paragraphs 1 through 74, inclusive.

105.   According to the Idaho Household Broadband Grant, eligible projects must be completed by December 15, 2020, fifteen (15) days before the CARES Act covered period ends.

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

106.   Bonner County is informed and believes, and thereon alleges, that the private for-profit company applicants are purchasing and taking title to the equipment that will be installed under the Idaho Household Broadband Grant in order to have such equipment operational by no later than December 15, 2020. The useful life of broadband equipment is several years. Bonner County would then reimburse the private for-profit company with CARES Act financial assistance in an amount equal to, inter alia, the entire purchase price of the equipment and installation cost.

107.   The Guidance requirements are similar to those found in the CARES Act and state that a "recipient may use payments from the Fund to purchase a durable good that is to be used during the current period and in subsequent periods if the acquisition in the covered period was necessary due to the public health emergency." Guidance, p. 2.

108.   The Uniform Guidance and OMB Circular A-87 requires that Bonner County allocate and assign costs to cost objectives in reasonable proportion to the benefit received.  2 C.F.R. §§ 200.4 and 200.225; OMB Circular A-87.

109.   An actual and justiciable controversy exists because Defendants have implemented and administered the Idaho Department of Commerce Household Broadband Grant Program in a manner that is inconsistent with the CARES Act's December 30, 2020 deadline by delaying the implementation of necessary projects

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

involving durable goods that will still be in use for approximately ten (10) years after the covered period while only being in use for fifteen (15) days during the covered period.

110.   An actual and justiciable controversy exists because if Bonner County determines that the installation of broadband equipment to provide household broadband coverage is necessary due to the public health emergency and applies for and receives CARES Act financial assistance through the State of Idaho under the Household Broadband Grant, it remains uncertain whether reimbursing a private for-profit company for equipment purchased to provide household broadband for fifteen (15) days of the covered period will qualify as a necessary expenditure under the CARES Act.

111.   An actual and justiciable controversy exists because if the purchase and installation of the broadband equipment qualifies as a necessary expenditure under the CARES Act, it remains uncertain whether Bonner County may reimburse the private for-profit company who has, upon information and belief, already purchased and taken title in and to the equipment, or whether the County must depreciate the reimbursement based upon the useful life of the equipment in proportion to fifteen (15) days of use during the covered period.

112.   Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Bonner County seeks a declaratory judgment from this Court that reimbursing the

COMPLAINT FOR DECLARATORY JUDGMENT

private for-profit company in full for the entire cost of the broadband equipment and installation for use during the last fifteen (15) days of the covered period qualifies as a necessary expenditure under the CARES Act and would not constitute an unlawful misuse of public funds or waste.

## FIFTH CAUSE OF ACTION

### Declaratory Judgment that Bonner County's Participation in the Broadband Grant Program Will Not Violate the Gift Clause

(Against All Defendants)

113.   Bonner County incorporates by reference the allegations contained in paragraphs 1 through 74, inclusive.

114.   Under the Constitution of the State of Idaho, Article 8, section 4, "No county…shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association or corporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state."

115.   Under the Constitution of the State of Idaho Article 12, section 4, "No county, town, city, or other municipal corporation, by vote of its citizens or otherwise, shall ever become a stockholder in any joint stock company, corporation or association whatever, or raise money for, or make donation or loan its credit to, or in aid of, any such company or association: provided, that cities and towns may

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

contract indebtedness for school, water, sanitary and illuminating purposes: provided, that any city or town contracting such indebtedness shall own its just proportion of the property thus created and receive from any income arising therefrom, its proportion to the whole amount so interested."

116.   Bonner County, "as a creature of the state, possesses and exercises only those powers either expressly or impliedly granted to it." *Sandpoint Water & Light Co. v. City of Sandpoint*, 31 Idaho 498, 503, 173 P. 972, 973 (1918); *Boise Dev. Co. v. Boise City*, 30 Idaho 675, 688, 167 P. 1032, 1034-35 (1917).

117.   Idaho has long recognized Dillion's rule and under Dillon's Rule, a municipal corporation may exercise only those powers granted to it by either the state constitution or the legislature and the legislature has absolute power to change, modify or destroy those powers at its discretion. *Caesar v. State*, 101 Idaho 158, 160, 610 P.2d 517, 519 (1980) (quoting *State v. Steunenberg*, 5 Idaho 1, 4, 45 P. 462, 463 (1896)).

118.   Under *State ex rel. Rich v. Idaho Power Co.*, 81 Idaho 487, 506 (1959), a "use of property to the public must be an exclusive use by the public, open to all the people on a basis of equality to such an extent as the capacity of the property admits."

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

119.   Under *State v. Parsons*, 58 Idaho 787 (1938), if a tax cannot be levied for a particular purpose, no appropriation of public money can be made for such purpose.

120.   Purposes other than public purposes are not "legitimate current expenses for the lawful administration of the government of the county," and donation or appropriation made to private for-profit companies would place county funds under the control of "individuals not officers of the county or amenable to the laws authorizing the expenditure of public moneys." *Fluharty v. Board of Com'rs*, 29 Idaho 203 (1960).

121.   An actual and justiciable controversy exists because the Household Broadband Grant requires Bonner County to reimburse any eligible project completed before December 15, 2020.  After the Grants are executed, Bonner County will become liable in contract for a liability or debt to a private for-profit corporation in the State of Idaho because the private for-profit corporation is directly purchasing the broadband equipment and financing the cost of installation.

122.   An actual and justiciable controversy exists because the Idaho Legislature has not authorized Idaho counties to levy a tax, make a donation to, or become responsible for any debt, contract or liability of any corporation in or out of the State of Idaho to develop broadband and the Idaho Constitution has not been amended to allow the same.

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

123.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Bonner County seeks a declaratory judgment from this Court that a donation of CARES Act financial assistance to private for-profit company to develop broadband pursuant to the Grant does not violate Idaho Constitution Article 8, section 4 or Article 12, section 4.

## SIXTH CAUSE OF ACTION

**Declaratory Judgment that Bonner County is a Subrecipient of Federal Funds**

(Against All Defendants)

124.    Bonner County incorporates by reference the allegations contained in paragraphs 1 through 74, inclusive.

125.    Treasury Guidance provides: "Fund payments are considered to be federal financial assistance subject to the Single Audit Act (31 U.S.C. §§ 7501-7507) and the related provisions of the Uniform Guidance, 2 C.F.R. § 200.303 regarding internal controls, §§ 200.330 through 200.332 regarding subrecipient monitoring and management, and subpart F regarding audit requirements."

126.    Pursuant to 2 C.F.R. § 200.330, "pass-through-entities" ("PTE") must make "case-by-case determinations whether each agreement it makes for the disbursement of Federal program funds casts the party receiving the funds in the role of a subrecipient or a contractor."

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

127.   If Idaho State is a PTE and Bonner County is a subrecipient, Defendants were required to impose specific subaward conditions that comply with Treasury Guidance as to the Household Broadband Grant and as applied to Idaho's Payroll Replacement Program pursuant to 2 C.F.R. § 200.331(c).

128.   Further instead of monitoring the activities of the subrecipient (Bonner County) to ensure that the subaward is used for authorized purposes as is required by 2 CFR 200.331(d), the Governor's Office through its chief counsel has advised Counties including Bonner to take a reckless approach to spending said funds in its Payroll Replacement Program proposal.

129.   An actual and justiciable controversy now exists because Defendants, and each of them, have failed to properly characterize Bonner County as either a subrecipient or a contractor under 2 C.F.R. § 200.330.  Instead, Defendants have employed a hybrid approach that affords Bonner County all of the responsibilities of a subrecipient with none of the discretion held by a subrecipient pursuant to the federal regulations.

130.   Specifically, under the terms of the Broadband Grant and payroll program, Bonner County cannot determine who is eligible to receive what Federal assistance; Bonner County has no responsibility for programmatic decision making; Bonner County is not using the Federal funds to carry out a program for a public purpose specified in the CARES Act, but is providing goods and services

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

for the benefit of the pass-through entity and is being asked to provide assurances of CARES Act compliance.

131.   Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Bonner County seeks a declaratory judgment from this Court that Bonner County is a "subrecipient" entitled to all of the rights and responsibilities afforded to subrecipients under 2 C.F.R. § 200.330.

## RULE 57 REQUEST FOR SPEEDY HEARING

Pursuant to Rule 57 of the Federal Rules of Civil Procedure, "The court may order a speedy hearing of a declaratory judgment action."  Bonner County hereby requests a speedy hearing of the matters presented in this Complaint based on the urgency of such matters and on the current deadlines for applying for, allocating, and using CARES Act funds.

## PRAYER FOR RELIEF

WHEREFORE, Bonner County respectfully requests that the Court:

1.      Enter judgment according to the declaratory relief sought;

2.      Award Bonner County its costs in this action;

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1

3.      Award such further relief to which Bonner County may be entitled as

a matter of law or equity, or which the Court determines to be just and proper.

DATED:  July 14, 2020

> */s/ D. Scott Bauer*
> D. Scott Bauer
> BONNER COUNTY PROSECUTOR'S
> OFFICE
>
> */s/ Darrin L. Murphey*
> Darrin L. Murphey
> MURPHEY LAW OFFICE, PLLC
>
> Barbara E. Lichman, Ph.D.
> Paul J. Fraidenburgh
> Daniel S. Shimell
> BUCHALTER, A Professional Corporation
>
> *Attorneys for Plaintiffs*

COMPLAINT FOR DECLARATORY JUDGMENT
BN 41185653v1